## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| RONALD JORDAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:12CV2070 JCH |
| BRIAN D. HALL, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Brian D. Hall and Joey Arcand's (collectively "Defendants") Motion for Summary Judgment, filed December 5, 2014. (ECF No. 119).[1] The motion is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Ronald Jordan is an offender in the Missouri Department of Corrections ("MDOC"), currently incarcerated at Potosi Correctional Center ("PCC") in Mineral Point, Missouri. (ECF No. 121, ¶ 1). Defendant Brian D. Hall ("Hall") is employed by MDOC as a Corrections Officer I ("COI"), and currently assigned to PCC. (*Id.*, ¶ 2). Defendant Joey Arcand ("Arcand") is employed by MDOC as a Correctional Case Manager, and currently assigned to Eastern Reception Diagnostic and Correctional Center ("ERDCC"). (*Id.*, ¶ 3).[2] Defendant Paul Johnson ("Johnson") was previously employed by MDOC as a Caseworker ("CCA") at PCC.

---

[1] Defendant Paul Johnson joined in Defendants' Motion for Summary Judgment. In an Order entered this day and incorporated herein, however, the Court directed the Clerk of Court to enter default judgment against Defendant Johnson.

[2] Plaintiff denies Arcand is currently assigned to ERDCC, maintaining instead that he is assigned to PCC. (ECF No. 136, ¶ 3). Plaintiff offers no evidence to support his assertion, however. In any event, Arcand acknowledges that at all times relevant to Plaintiff's Complaint, he was assigned to PCC. (ECF No. 121-2, ¶ 2).

(*Id.*, ¶ 4).

At approximately 8:40 or 8:45 p.m. on May 2, 2010, Hall called for a lockdown in Housing Unit 5 at PCC. (ECF No. 121, ¶ 8; ECF No. 136, ¶ 8). Hall maintains the lockdown was broadcast over the loudspeaker, and the parties agree that prisoners in the housing unit began returning to their cells. (ECF No. 121, ¶¶ 9, 10). Shortly thereafter, Plaintiff exited his cell and asked whether there were five more minutes before lockdown. (*Id.*, ¶ 11). Hall maintains Plaintiff was told no, and then proceeded to argue with Hall.[3] (*Id.*, ¶¶ 11, 12). The parties agree Plaintiff did return to his cell at that point. (*Id.*, ¶ 13).

Plaintiff eventually received a conduct violation (CDV), for violation of the following rules: 19.1—Creating a Disturbance, and 20.1—Disobeying an Order. (ECF No. 121-3, P. 19).[4] Hall believed that because of his actions during the lockdown, Plaintiff was a security risk and needed to be placed in protective custody. (ECF No. 121, ¶ 16). At approximately 9:50 p.m. on May 2, Plaintiff was interviewed by COII Chad Cooke ("Cooke") regarding the CDV. (*Id.*, ¶ 17). During the interview, Plaintiff stated that he did not hear the lockdown announcement over the loudspeaker.[5] (*Id.*, ¶ 18). He did not request that Cooke interview any witnesses. (*Id.*).

On May 3, 2010, Plaintiff prepared a written defense statement to the CDV. (ECF No. 121-3, PP. 20-21). On May 6, 2010 Arcand, as Disciplinary Hearing Officer ("DHO"), held a hearing on the CDV. (ECF No. 121, ¶ 20). Plaintiff requested that Arcand review video footage from Housing Unit 5 for the night of May 2, 2010, to show that he did not argue with Hall but instead returned to his cell as directed. (*Id.*, ¶ 22). Arcand maintains he informed Plaintiff it is

---

[3] Plaintiff vehemently denies arguing with Hall, claiming he immediately complied with Hall's order to lock down. (ECF No. 1, P. 6).
[4] Although Plaintiff denies receiving the CDV on May 2, the form itself is signed and dated by Plaintiff that same date. (*See* ECF Nos. 136, ¶ 14, 121-3, P. 19).
[5] Plaintiff claims he did not hear the announcement over the loudspeaker because it was never made. (ECF No. 136, ¶ 18).

not MDOC's practice or procedure to review video footage for minor conduct violations, and that nothing in the procedures required him to do so simply because Plaintiff so requested. (*Id.*, ¶ 23).[6] The parties agree that video recorders at PCC do not record sound, only picture, so Arcand would not have been able to tell what was being said even if he had conducted the requested review. (*Id.*, ¶ 24).

Plaintiff was found guilty of the CDV, and the finding was recommended as submitted by Cindy Griffith, the Functional Unit Manager ("FUM") of Housing Unit 5. (ECF No. 121, ¶ 25). On or about May 17, 2010, Plaintiff filed an Informal Resolution Request ("IRR"), stating that the DHO had failed to review requested evidence, i.e., the videotape. (*Id.*, ¶ 26; ECF No. 121-3, PP. 15-17). Plaintiff's IRR was denied by G. Bollinger, CCA, as follows:

> I have reviewed all pertinent information regarding your complaint and can find no evidence to support your claims. Furthermore, there is nothing in SOP19-1.3A that says the DHO must use video evidence when an offender requests it. You were found guilty on the CDV, (PCC10-00712), by the DHO. The FUM reviewed these findings and the acting Assistant Warden approved the findings and sanctions.

(ECF No. 121-3, P. 14). Plaintiff then filed a Grievance Appeal, which was denied on August 12, 2010, as follows:

> After reviewing the pertinent material I find you were given due process and found guilty. The evidence was sufficient to support the findings with no procedural errors to warrant dismissal. Also, department property such as recorded video feed from security cameras, is not provided just because an offender requests such.

(*Id.*, P. 5). Plaintiff further appealed to Deputy Division Director Dwayne Kempker, who denied Plaintiff's Appeal on September 2, 2010, in relevant part as follows:

> I have thoroughly reviewed your complaint and relative documentation. PCC SOP/IS-Disciplinary Hearings Minor, III, G.1. states that "The offender shall be allowed to make a statement and present evidence on her/his behalf" and d. "The

---

[6] According to Plaintiff, Arcand gave no reason or explanation for refusing to review the video footage as requested. (ECF No. 136, ¶ 23).

>reason for any such exclusion shall be listed on the Disciplinary Action Report." You were afforded the opportunity to make a statement and present evidence; it is noted that you did not have any evidence to present at the hearing. Section III, 7. states "The disciplinary hearing officer <u>should call witnesses available and necessary</u> to the charge being reviewed, but need not call witnesses with repetitive information" and b. "Reasons for failing to call any witnesses or obtain statements from the witnesses requested by the offender should be recorded on the <u>Witness Request form.</u>"  There is no indication that you requested witnesses at the interview of the violation report; therefore a Witness Request form was not completed or available for staff to note anything on.  In addition, you may feel that the video footage of the housing unit wing is your "witness"; however policy is referring to individuals and not video footage when referring to the word "witness".  The video footage was not available for review when the violation was heard on 5/06/10, and video footage of the housing unit's wing are usually not kept for an extended period of time unless certain incidents have occurred on the housing unit and staff know such may need to be referred to at a later date, i.e. assaults, use of forces, etc.  Staff is not required to view videotapes, which have no audio, just because an offender requests it.  I find that the violation was appropriately issued to you and you received due process on such with no noted errors.  The violation and sanction will remain as written; your request for remedy is denied.

(*Id.*, P. 3).

As a result of the May 2, 2010, CDV, Plaintiff was placed in administrative segregation ("ad-seg"). (ECF No. 121, ¶ 34). According to Defendants, a Temporary Administrative Segregation Confinement ("TASC") Order was prepared on May 2, 2010 (the day Plaintiff was assigned to ad-seg), signed by Jeffrey Turner, CSI, and approved by Superintendent Ian Wallace. (*Id.*, ¶¶ 34-36).  Plaintiff denies that an official TASC order approving Plaintiff's ad-seg confinement was prepared on May 2, 2010. (ECF No. 136, ¶¶ 34-36).[7] He therefore requested an IRR from Arcand, and submitted the completed form on or about September 20, 2010. (ECF No. 1, P. 12).  Plaintiff maintains the following month Johnson showed him the previously delivered document, insisted it was a TASC order, and then scolded Plaintiff for filing an IRR

---

[7] Plaintiff admits that on or about July 13, 2010, Johnson gave Plaintiff a purported copy of his TASC order. (ECF No. 1, P. 11).  According to Plaintiff, however, the document he received was "no TASC order at all," but rather a "made-up computer printout with information pertinent to the aforesaid conduct violation and Plaintiff's confinement to ad-seg." (*Id.*, PP. 11-12).

relating to it.  (*Id.*, PP. 12-13).  According to Plaintiff, Johnson then threatened that even if Plaintiff managed to return to general population, he would not be allowed to resume his job in the chair factory.  (*Id.*, P. 13).

Plaintiff claims he never received any feedback on his filed IRR.  (ECF No. 1, P. 13).  He therefore followed up, first with Johnson, and then with FUM Kay Malloy and Grievance Officer Robert Savage.  (*Id.*, P. 14).  Plaintiff finally wrote to Arcand in January of 2011, requesting the tracking number for the IRR, and Arcand informed Plaintiff that the computer contained no record he had filed an IRR.  (*Id.*).  Plaintiff maintains Johnson discarded his original IRR in order to obstruct Plaintiff's ability to seek redress of his situation.  (*Id.*, P. 15).[8]

Plaintiff filed a second IRR on March 4, 2011, for "[f]ailure to adhere to the mandates of SOP21-1.1 Temporary Administrative Segregation Confinement, resulting in arbitrary Ad-Seg confinement, in violation of procedural due process."  (ECF No. 121-4, P. 10).  Plaintiff complained that he was not given a copy of the TASC form when he was placed on TASC on May 2, 2010.  (ECF No. 121-4, PP. 12, 16).  Plaintiff's IRR regarding the alleged failure to provide the TASC order was denied.  (*Id.*, P. 15).

Plaintiff filed an Offender Grievance on April 1, 2011, which was denied on May 24, 2011.  (ECF No. 121-4, PP. 7-8).  Plaintiff then appealed to Division Director Kempker, who denied the Grievance on July 13, 2011, as follows:

> I have thoroughly reviewed your complaint and relative documentation and note that your assignment to the administrative segregation unit on 5/02/10 occurred over a year ago.  The copy of the TASC order dated 5/02/10 that you provided with your grievance is legitimate with no evidence being found that such is otherwise.  Just because PCC staff did not use form MO 931-1431, which was originated in May 2006 and is referred to in IS21-1.1 Temporary Administrative

---

[8] Plaintiff asserts Johnson further retaliated against him by "knowingly, deliberately, and unjustly prolonging Plaintiff's confinement in the restrictive conditions of H.U. 3 for months," and by attempting to prevent Plaintiff from returning to his position in the chair factory.  (ECF No. 1, PP. 15, 17-18).  Plaintiff was able to return to his job in the chair factory in November, 2010.  (ECF No. 121, ¶ 82).

> Segregation Confinement (TASC), does not mean that the TASC orders are not official.  Be advised that the form PCC staff used for your 5/02/10 TASC orders is a computer-generated form that is used by PCC staff for TASC orders.  Information available to me indicates that CCA Johnson attempted to discuss an IRR that he received from you; however, you took the IRR and a copy of your TASC orders and said that you were not going to argue about it.  CCA Johnson has indicated that he never saw the IRR or TASC order again and that he thought the issue was over with; CCA Johnson refutes your allegations that he threw the IRR away.  I suggest that you request to talk to your housing unit FUM or Caseworker if you have any questions regarding your eligibility for assignment to HU #5A (Honor Dorm).  Your request for remedy is denied at this time.

(ECF No. 121-4, P. 2).

On August 31, 2011, Hall conducted a random pat search of Plaintiff, and found he was carrying a substantial amount of rolled-off state issue toilet tissue and one state issue brown paper towel.  (ECF No. 121, ¶ 48; ECF No. 121-5, P. 15).  Hall allegedly considered this to be contraband, and thus issued Plaintiff a CDV for violations of rules 22.1—Theft and 24.1—Contraband.  (*Id.*).  Plaintiff was interviewed that same day, and prepared a written defense to the CDV.  (ECF No. 121, ¶¶ 49-50; ECF No. 121-5, PP. 15, 17).  He was found guilty of the violations at a hearing held on September 2, 2011.  (ECF No. 121, ¶ 51).

On September 13, 2011, Plaintiff filed an IRR regarding the CDV, seeking dismissal and expungement because he had no notice the items he carried were unauthorized.  (ECF No. 121, ¶ 52).  The CDV was reviewed, and modified to contraband only.  (*Id.*, ¶ 53).  Plaintiff filed a grievance in regard to the CDV on November 8, 2011, which was denied on January 13, 2012.  (*Id.*, ¶ 54).  Plaintiff then filed a Grievance Appeal, and on February 28, 2012, the Deputy Division Director found there was insufficient evidence to support the CDV and ordered that it be dismissed and expunged.  (*Id.*, ¶¶ 55, 56).

On November 4, 2011, Plaintiff filed an IRR regarding his complaint that on November 1, 2011, at approximately 9:00 p.m., his cell was searched by Hall and CO Leach.  (ECF No.

121, ¶ 57).  Plaintiff claimed a half bottle of prayer oil and two bottles of cologne were removed, and sought to have them returned.  (*Id.*).[9]  Plaintiff received a Property Removal Form, and was informed that the confiscated items were sent to the Highway Patrol Crime lab for testing.  (*Id.*, ¶¶ 59-60).  Plaintiff filed a Grievance regarding the removal on December 14, 2011, which was denied on January 25, 2012, as follows:

> Your grievance complaint and pertinent information have been reviewed.  You clearly state in your complaint that if the evidence is not properly (*sic*) handled, sealed, and inventoried then the items to be tested should be immediately discarded, these items were disposed of under the guidelines which you refer to.
>
> These bottles were removed from all offenders at PCC, these bottles contained minute or trace amounts which could not be positively confirmed as a controlled substance.  As the bottles were no longer utilized to preserve the original products purchased, there would be no need to maintain such packaging.

(ECF No. 121-6, P. 8).  Plaintiff then filed a Grievance Appeal with the Division Director, and on April 4, 2012, Deputy Division Director Kempker responded as follows:

> Further inquiry was made with PCC in regards to this matter.  Information was received that the bottles of cologne and prayer oil that had been confiscated from offenders at PCC on/around 11/01/11 contained very small amounts of prayer oil or cologne and such ended up being disposed of and were not referred to the Highway Patrol's Criminal Laboratory for testing.  The *prayer oil had been donated by an outside source*; however, review of your canteen spends for 2011 indicates that you purchased *one* bottle of Joop fragrance on 7/11/11 for $3.11.  You indicate at the IRR level that the bottles confiscated from you were approximately half full; therefore, I direct for $1.55 to be credited to your inmate account for reimbursement of the confiscated bottle of cologne.  You will not be reimbursed for the prayer oil since it was donated.  This should resolve your complaint.

(*Id.*, P. 2).

---

[9] Plaintiff denies Defendants' claim that Hall had been verbally instructed to remove items such as prayer oil and cologne.  (ECF No. 121, ¶ 58; ECF No. 136, ¶ 58).

- 7 -

On November 9, 2011, Plaintiff filed an IRR regarding his complaint that on November 1, 2011, Hall searched his cell and removed several items that were listed on a property removal form, but failed to list a manila legal folder he removed. (ECF No. 121, ¶ 65). Plaintiff sought return of the folder. (*Id.*). Hall responded as follows:

> The manila folder in question had the markings on it from the Institutional Chapel.[10] Those folders with those markings are not sold in canteen. They have to be removed from the chapel area. The folder was taken and disposed of as nuisance contraband due to: 1) obtained in an unauthorized manner, 2) altered.

(ECF No. 121-7, P. 11). Plaintiff's IRR was denied, as were his Grievance and Grievance Appeal with respect to the confiscated manila folder. (ECF No. 121, ¶¶ 67-71).[11]

Plaintiff finally claims that on July 11, 2012, Hall once again searched Plaintiff's cell, and that as a result Plaintiff was placed in ad-seg confinement. (ECF No. 1, PP. 23-24). On July 13, 2012, Plaintiff filed an IRR regarding his contention that he was taken to ad-seg but not given notice regarding the reason for the placement. (ECF No. 121, ¶ 72).[12] Plaintiff's IRR was denied as follows:

> There is no evidence to support this claim. Reporting officer states that he did in fact give you a copy of your TASC sheet.[13] It is also fact that you were offered a copy of the TASC sheet in question, at a later date, and you refused to accept it at that time. In addition, records indicate you were released to general population on 08/13/2012 with no CDV issued.

---

[10] Plaintiff denies the manila folder had markings on it from the chapel. (ECF No. 136, ¶ 66).
[11] Plaintiff claims Hall again searched and trashed his cell on or about March 6, 2012. (ECF No. 1, PP. 22-23).
[12] Plaintiff acknowledges that six days later, on July 17, 2012, he learned that he was placed in ad-seg as a result of dangerous contraband allegedly found during a cell search. (ECF No. 1, P. 24).
[13] Plaintiff continues to deny he was provided a copy of the TASC order. (ECF No. 136, ¶ 73).

(ECF No. 121-8, P. 13). Plaintiff's Grievance and Grievance Appeal with respect to this issue were both denied. (ECF No. 121, ¶¶ 74-76).[14]

On November 2, 2012, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (ECF No. 1). Named as Defendants, and sued in their individual capacities, were Hall, Arcand, and Johnson.[15] As relevant here, Plaintiff claims Hall violated his constitutional rights by improperly placing him in administrative segregation after issuing a false conduct violation, and by retaliating against him for exercising his constitutional right to file grievances against government actors. (*Id.*, P. 27). Plaintiff further claims Arcand violated his Fourteenth Amendment procedural due process rights, in connection with the disciplinary hearing held on May 6, 2010. (*Id.*).

As noted above, Defendants filed the instant Motion for Summary Judgment on December 5, 2014, claiming there exist no genuine issues of material fact and they are entitled to judgment as a matter of law. (ECF No. 119). Defendants further claim they are entitled to judgment in their favor based on the defense of qualified immunity. (*Id.*).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes

---

[14] Both parties reference an incident that occurred after the filing of Plaintiff's Complaint on November 2, 2012. (*See* ECF No. 121, ¶¶ 77-79; ECF No. 137, ¶ 17). Plaintiff neither requested nor received leave to amend his Complaint, however, and thus said incident is not before the Court.

[15] Plaintiff originally named Clifford Owens, FUM, as a Defendant. On April 25, 2014, the Court dismissed Mr. Owens as a Defendant for lack of timely service. (ECF No. 45).

over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

**I.     Did Defendants Violate Plaintiff's Constitutional Rights?**

    **A.     False Conduct Violation**

In their Motion for Summary Judgment, Defendants first assert Plaintiff cannot sue Hall under § 1983 for allegedly issuing a false conduct violation. (ECF No. 120, PP. 4-6). Defendants are correct that "the filing of a false disciplinary charge is not itself actionable under § 1983." *Dixon v. Brown*, 38 F.3d 379, (8th Cir. 1994); *see also Beyer v. Woods*, 2014 WL 4707718, at *2 (E.D. Mo. Sep. 22, 2014); *Williams v. Horner*, 403 Fed.Appx. 138, 140 (8th Cir. 2010). Plaintiff apparently concedes this point in his response (*see* ECF No. 135, P. 6), and so this portion of Defendants' Motion for Summary Judgment will be granted.

    **B.     Procedural Due Process Violations**

Plaintiff alleges Hall's arbitrary placement of Plaintiff in ad-seg confinement in May, 2010, without explanation or proper approval, violated his right to procedural due process. (ECF No. 135, PP. 4-6). He further alleges Arcand denied him procedural due process in connection with the ensuing disciplinary proceeding. (ECF No. 1, P. 27). Specifically, Plaintiff claims Arcand's refusal to review the requested documentary evidence, i.e., video footage from the evening of May 2, 2010, violated Plaintiff's right to procedural due process.

Under Eighth Circuit law, "'[i]n order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action.'" *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010), quoting *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003).[16] In order to show he was deprived of a protected liberty interest, Plaintiff here must identify conditions that imposed an "'atypical or significant hardship…in relation to the ordinary incidents of prison life.'" *Id.*, quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Upon consideration, the Court finds Plaintiff's procedural due process claims against Hall and Arcand fail, as the Eighth Circuit consistently has held that administrative and disciplinary segregation are not atypical and significant hardships that trigger due process protections. *McCauley v. Dormire*, 245 Fed. Appx. 565, 566-67 (8th Cir. 2007).[17] Furthermore, in deciding whether an inmate possesses a liberty interest, the Eighth Circuit "compare[s] the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as

---

[16] Only if Plaintiff has a protected liberty interest will the Court "consider what process is due by balancing the specific interest that was affected, the likelihood that the…procedures would result in an erroneous deprivation, and [MDOC's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citation omitted), *cert. denied*, 549 U.S. 1348 (2007).

[17] "The Eighth Circuit has only found protected liberty interests where inmates were confined to administrative segregation for ten years or longer." *Strutton v. Meade*, 2008 WL 4534015, at *16 n. 6 (E.D. Mo. Sep. 30, 2008), citing *Williams v. Norris*, 277 Fed. Appx. 647, 648-49 (8th Cir. 2008); *Heron v. Schriro*, 11 Fed. Appx. 659, 661-62 (8th Cir. 2001); *Herron v. Wright*, 116 F.3d 480 (8th Cir. 1997).

an ordinary incident of prison life….[It does] not consider the procedures used to confine the inmate in segregation." *Phillips v. Norris*, 320 F.3d at 847 (internal quotations and citations omitted). *See also Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (citations omitted) ("If [the plaintiff] has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined."). This portion of Defendants' Motion for Summary Judgment will therefore be granted.

### C. Retaliation

In his Complaint, Plaintiff asserts Hall retaliated against him after he exercised his constitutional right to file grievances using the prison's established procedures. Under Eighth Circuit law, "[a] prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right.'" *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007), quoting *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993). To prevail on his retaliation claim, Plaintiff must show: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (internal quotations and citations omitted). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right." *Id.* (internal quotations and citations omitted).

In the instant case, it is undisputed that Plaintiff engaged in a protected activity when he filed a grievance against Hall. *See Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citation

omitted) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."). Plaintiff thus easily satisfies the first prong of the test.

Plaintiff also claims he was subjected to adverse action by Hall subsequent to his utilization of the grievance procedures. Plaintiff specifies several incidents of allegedly retaliatory conduct by Hall, including his (1) filing of false disciplinary reports, (2) conduction of unnecessary cell searches, and (3) confiscation and/or destruction of personal property. All three actions are clearly adverse. *See Edgar v. Crawford*, 2009 WL 3835265, at *5 (W.D. Mo. Nov. 16, 2009), citing *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (Although prisoners "do not have a legitimate expectation of privacy and the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells,…the Eighth Amendment protects prisoners from searches conducted only for 'calculated harassment.'"); *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) ("[A] prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations…").[18] In addition, the actions complained of were not so trivial that a person of ordinary firmness would have continued in the protected activity undisturbed. *See Garcia v. City of Trenton*, 348 F.3d 726, 728, 729 (8th Cir. 2003) (citation omitted) ("The ordinary-firmness test is…designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment….Ultimately, this sort of question is usually best left to the judgment of a jury.").

---

[18] While the Court recognizes that "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule," in order successfully to defend against a retaliatory discipline claim a defendant must show "'some evidence' the inmate actually committed a rule violation." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citations omitted). A report from a correctional officer, "even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation," but only when the violation is found by an impartial decisionmaker. *Id.* At 831. Here, the allegations in Hall's August 31, 2011, CDV were not upheld by an impartial decisionmaker, but instead were dismissed and expunged, and so the "some evidence" standard does not apply. *See Spencer*, 738 F.3d at 911.

The last prong of the retaliation test asks if the prisoner's exercise of his right was the actual motivation for the adverse action. "The plaintiff-inmate has a heavy evidentiary burden to establish a prima facie case," and "[m]erely alleging that an act was retaliatory is insufficient." *Meuir*, 487 F.3d at 1119 (citations omitted); *see also Lewis*, 486 F.3d at 1029 (internal quotations and citations omitted) ("To avoid summary judgment, [Plaintiff] must submit affirmative evidence [of] a retaliatory motive.").

To substantiate his claim of retaliatory motive, Plaintiff points to multiple instances where he allegedly was singled out for discipline by Hall. For example, Plaintiff alleges that in August, 2011, Hall searched only Plaintiff, even though he was walking with a large group of inmates. (ECF No. 1, P. 18). Plaintiff offers further evidence of a retaliatory motive when he asserts the cell searches to which he was subject prior to his lodging of complaints against Hall did not involve the trashing of his cell and discarding of his personal property, and when he claims the confiscation of his cologne was not random, as his then-cellmate also had a bottle of cologne on his shelf in plain sight that was not taken. (ECF No. 135, P. 9). Finally, Plaintiff posits something more sinister with respect to the July, 2012, cell search, when he claims Hall pretended to have found dangerous contraband in Plaintiff's cell. (*Id.*, P. 11). In viewing the facts in the light most favorable to Plaintiff, as it must for purposes of this motion, the Court finds a genuine issue of material fact remains as to whether the series of actions by Hall were carried out as a form of retaliation.[19] This portion of Defendants' Motion for Summary Judgment must therefore be denied.

---

[19] In their motion, Defendants note the August 31, 2011, pat search took place over a year after the original altercation on May 2, 2010, and almost exactly a year after Plaintiff's final grievance on the matter was denied on September 2, 2010, and the cell searches were even later. Normally, this lack of a temporal connection between the protected activity and the alleged retaliation would dispel any inference of causal connection. *See Lewis*, 486 F.3d at 1029. Here, however, Plaintiff maintains that due to his placement in restrictive housing, the August, 2011, search took place during his first encounter with Hall

**II.     Are Defendants Entitled To Qualified Immunity?**

Defendants next assert they are entitled to qualified immunity with respect to Plaintiff's claims. (ECF No. 120, PP. 16-18). Under Eighth Circuit law, "[q]ualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court employs a two-part inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir.), citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *cert. denied*, 558 U.S. 972 (2009).

> First, courts [] consider whether, taken in the light most favorable to the party asserting the injury,....the facts alleged show the [official's] conduct violated a constitutional right.....Second, courts [] ask whether the right was clearly established[20]...

*Id.* at 951-52 (internal quotations and citations omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

Defendants concede that prisoners have a constitutional right under the First Amendment to be free from retaliatory conduct. (ECF No. 120, P. 16). With its above rulings the Court has determined that, taken in the light most favorable to Plaintiff, the facts alleged show Hall's

---

after the May, 2010, incident. (ECF No. 135-2, ¶¶ 14-15). Furthermore, although not entirely clear from his submissions, Plaintiff apparently asserts the subsequent cell searches and destruction were conducted in retaliation for Plaintiff's filing numerous complaints and grievances against Hall throughout the time period in question. (*See, e.g.*, ECF No. 135-1, ¶¶ 47, 72; ECF No. 135-2, ¶¶ 33, 34). Under these circumstances, fact questions remain as to the existence of a temporal connection as well.

[20] While *Saucier* set forth the two-part test with a mandatory sequence for analysis, the Supreme Court has since reversed itself and eliminated the mandatory aspect of the sequential analysis. *See Serna*, 567 F.3d at 952, citing *Pearson v. Callahan*, 555 U.S. 223 (2009).

conduct violated said constitutional right.  Defendants do not deny the right was clearly established at the time of the alleged violations, and so their request for qualified immunity must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 119) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment against Defendant Joey Arcand and for Partial Summary Judgment against Defendant Brian D. Hall (ECF No. 127) is **DENIED**.

Dated this 4th Day of March, 2015.

                                              /s/ Jean C. Hamilton
                                              UNITED STATES DISTRICT JUDGE