UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV2070 JCH |
| | ) | |
| BRIAN D. HALL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court following a bench trial conducted June 15 and 16, 2015.

Having considered the pleadings, trial testimony, and exhibits submitted by the parties, the Court

hereby makes and enters the following findings of fact and conclusions of law in accordance with

Rule 52(a) of the Federal Rules of Civil Procedure.

**Findings Of Fact**

1.    Plaintiff Ronald Jordan ("Jordan") is an offender in the Missouri Department of Corrections

("MDOC"), currently incarcerated at Potosi Correctional Center ("PCC") in Mineral Point,

Missouri.

2.    Defendant Brian D. Hall ("Hall") is employed by MDOC as a Correctional Officer I ("COI"),

and currently assigned to PCC.

3.    On May 2, 2010, Hall called for a lockdown in Housing Unit 5 at PCC, and prisoners in the

housing unit began returning to their cells.

4.    Shortly thereafter, Jordan exited his cell and asked whether there were five more minutes

before lockdown.

5.      Hall ordered Jordan to lock down, and Jordan returned to his cell.

6.      Jordan received a conduct violation ("CDV") for violation of the following rules:  19.1—

        Creating a Disturbance, and 20.1—Disobeying an Order.

7.      Jordan prepared a written defense statement to the CDV, and on May 6, 2010, Correctional

        Case Manager Joey Arcand ("Arcand"), as Disciplinary Hearing Officer ("DHO"), held a

        hearing on the CDV.

8.      Jordan requested that Arcand review video footage from Housing Unit 5 for the night of May

        2, 2010, to show that he did not argue with Hall but instead returned to his cell as directed,

        but Arcand refused to do so.

9.      Jordan was found guilty of the CDV, and the finding was recommended as submitted by

        Cindy Griffith, the Functional Unit Manager ("FUM") of Housing Unit 5.

10.     On or about May 17, 2010, Jordan filed an Informal Resolution Request ("IRR"), stating that

        the DHO had failed to review requested evidence, i.e., the videotape.[1]

11.     Jordan's IRR was denied by G. Bollinger, CCA, as follows:

>       I have reviewed all pertinent information regarding your complaint and can find no
>       evidence to support your claims.  Furthermore, there is nothing in SOP19-1.3A that
>       says the DHO must use video evidence when an offender requests it.  You were
>       found guilty on the CDV, (PCC10-00712), by the DHO.  The FUM reviewed these
>       findings and the acting Assistant Warden approved the findings and sanctions.

12.     Jordan then filed a Grievance, which was denied on August 12, 2010, as follows:

>       After reviewing the pertinent material I find you were given due process and found
>       guilty.  The evidence was sufficient to support the findings with no procedural errors
>       to warrant dismissal.  Also, department property such as recorded video feed from
>       security cameras, is not provided just because an offender requests such.

---

1 Arcand received a memorandum informing him that an IRR had been filed regarding an incident in which he was
allegedly involved or of which he may have knowledge, and asking him to respond with any and all information he
might have regarding the allegations.  There is no indication in the record that Hall received a similar memorandum.

13.     Jordan then filed a Grievance Appeal, which was denied on September 2, 2010, in relevant

        part as follows:

> I have thoroughly reviewed your complaint and relative documentation. PCC
> SOP/IS-Disciplinary Hearings Minor, III, G.1. states that "The offender shall be
> allowed to make a statement and present evidence on her/his behalf" and d. "The
> reason for any such exclusion shall be listed on the Disciplinary Action Report."
> You were afforded the opportunity to make a statement and present evidence; it is
> noted that you did not have any evidence to present at the hearing. Section III, 7.
> states "The disciplinary hearing officer should call witnesses available and necessary
> to the charge being reviewed, but need not call witnesses with repetitive information"
> and b. "Reasons for failing to call any witnesses or obtain statements from the
> witnesses requested by the offender should be recorded on the Witness Request
> form." There is no indication that you requested witnesses at the interview of the
> violation report; therefore a Witness Request form was not completed or available for
> staff to note anything on. In addition, you may feel that the video footage of the
> housing unit wing is your "witness"; however policy is referring to individuals and
> not video footage when referring to the word "witness". The video footage was not
> available for review when the violation was heard on 5/06/10, and video footage of
> the housing unit's wing are usually not kept for an extended period of time unless
> certain incidents have occurred on the housing unit and staff know such may need to
> be referred to at a later date, i.e. assaults, use of forces, etc. Staff is not required to
> view videotapes, which have no audio, just because an offender requests it. I find
> that the violation was appropriately issued to you and you received due process on
> such with no noted errors. The violation and sanction will remain as written; your
> request for remedy is denied.

14.     As a result of the May 2, 2010, CDV, Jordan was placed in administrative segregation ("ad-

        seg"), where he remained for sixteen days.

15.     Jordan then was placed in Housing Unit 3 for several months.

16.     Jordan did not have any interactions with Hall while he was assigned to Housing Unit 3.

17.     In or around January, 2011, Jordan was moved to Housing Unit 6.

18.     Jordan encountered Hall on August 31, 2011, when he and approximately twenty co-workers

        were returning from their job site.

19. Hall conducted a pat search of Jordan[2], and found that he was carrying a significant amount of rolled-off state issue toilet tissue and one state issue brown paper towel.

20. Hall issued Jordan a CDV for violations of rules 22.1—Theft and 24.1—Contraband.

21. Jordan was found guilty of the rule 24.1 violation at a hearing held on September 2, 2011.

22. Jordan grieved the CDV, and eventually the violation was ordered dismissed and expunged.

23. On November 1, 2011, Hall and Correctional Officer Billy Leach searched Jordan's cell in Housing Unit 6.[3]

24. Jordan claims Hall left his cell in a "trashed condition."

25. Jordan filed an IRR on November 4, 2011, complaining that Hall confiscated a half bottle of prayer oil and two bottles of cologne.

26. Jordan received a Property Removal Form, and was informed that the confiscated items were sent to the Highway Patrol Crime lab for testing.

27. It appears the confiscated items were not sent to the Highway Patrol Crime Lab, but were destroyed.

28. Jordan filed a Grievance regarding the removal on December 14, 2011, which was denied on January 25, 2012, as follows:

> This review finds your complaint to be that COI Hall did not properly label and handle your prayer oil and cologne bottle when he confiscated them and sent them to be drug tested.
>
> Your grievance complaint and pertinent information have been reviewed. You clearly state in your complaint that if the evidence is not properly handled, sealed, and inventoried then the items to be tested should be immediately discarded. These items were disposed of under the guidelines which you refer to.

---

2 Hall testified that he elected to search Jordan because he noticed a bulge in Jordan's pocket. On cross-examination, he acknowledged that he did not mention the bulge in the written CDV.
3 Jordan testified that Hall performed the search, despite the fact that he was not assigned to Housing Unit 6.

These bottles were removed from all offenders at PCC, and contained minute or trace amounts which could not be positively confirmed as a controlled substance. As the bottles were no longer utilized to preserve the original products purchased, there would be no need to maintain such packaging.

29.    Jordan then filed a Grievance Appeal with the Division Director, and on April 4, 2012,

Deputy Division Director Kempker responded as follows:

> Further inquiry was made with PCC in regards to this matter. Information was received that the bottles of cologne and prayer oil that had been confiscated from offenders at PCC on/around 11/01/11 contained very small amounts of prayer oil or cologne and such ended up being disposed of and were not referred to the Highway Patrol's Criminal Laboratory for testing. The *prayer oil had been donated by an outside source*; however, review of your canteen spends for 2011 indicates that you purchased *one* bottle of Joop fragrance on 7/11/11 for $3.11. You indicate at the IRR level that the bottles confiscated from you were approximately half full; therefore, I direct for $1.55 to be credited to your inmate account for reimbursement of the confiscated bottle of cologne. You will not be reimbursed for the prayer oil since it was donated. This should resolve your complaint.

30.    Jordan filed a second IRR regarding the November 1, 2011, search on November 9, 2011,

claiming Hall failed to list a manila legal folder that he removed on the property removal

form.[4]

31.    Hall responded to Jordan's IRR as follows:

> The manila folder in question had the markings on it from the Institutional Chapel.[5] Those folders with those markings are not sold in canteen. They have to be removed from the chapel area. The folder was taken and disposed of as nuisance contraband due to: 1) obtained in an unauthorized manner, 2) altered.

32.    Jordan's IRR was denied, as were his Grievance and Grievance Appeal with respect to the

confiscated manila folder.

33.    On or about March 6, 2012, Jordan claims Hall again searched his cell.

---

4 Hall testified that he did not put the manila folder on the property removal form because it did not belong to Jordan.
5 Jordan denied the manila folder had markings on it from the chapel.

34. While Hall did not confiscate anything on that date, Jordan testified that he left the cell in a "trashed" condition.

35. Hall and Correctional Officer Marty Hibbitts searched Jordan's cell on July 11, 2012.

36. Officer Hibbitts found a razor blade taped under the cell door, and as a result both Jordan and his cellmate were placed in ad-seg confinement pending an investigation of the matter.

37. The investigation and video footage review did not reveal the source of the razor blade, and Jordan and his cellmate were released from ad-seg confinement after thirty-two days, without receiving a CDV.[6]

38. On November 2, 2012, Jordan filed a Complaint pursuant to 42 U.S.C. § 1983, alleging Hall violated his constitutional rights by retaliating against him for exercising his constitutional right to file grievances against government actors.[7]

39. As relief, Jordan seeks "[1] $5,000 in punitive damages against Defendant C.O.I Hall for retaliation via the false and malicious disciplinary charge he issued to Plaintiff on 08/31/2011 for grievances Plaintiff previously filed against him for the false 05/02/2010 conduct violation; [2] $3,500 in punitive damages against Defendant C.O.I Hall for retaliation via the malicious 11/01/2011 cell search resulting in the trashing of Plaintiff's cell, the malicious and willful discarding of Plaintiff's personal property, causing Plaintiff undue mental anguish; [3] $3,500 in punitive damages against Defendant C.O.I Hall for the retaliatory and malicious March 2012 cell search in which Plaintiff's cell was again trashed, causing Plaintiff undue mental anguish; [4] $10,000 in punitive damages against Defendant C.O.I Hall for his retaliatory actions on 07/11/2012, in which he targeted Plaintiff for another cell search that he maliciously and insidiously manipulated in such a way that resulted in Plaintiff

being improperly confined to segregation for thirty-two days, with the evil motive or intent to impose upon Plaintiff a serious institutional charge Plaintiff was not good for and/or have Plaintiff locked-up in the hole for a considerable period of time as punishment for Plaintiff's use of the prison grievance procedures."

**Conclusions Of Law**

1.  As stated above, Jordan contends Hall retaliated against him after he exercised his constitutional right to file grievances using the prison's established procedures.

2.  Under Eighth Circuit law, "[a] prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right.'" *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993)).

3.  To prevail on his retaliation claim, Jordan must show: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (internal quotations and citations omitted).

4.  "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right." *Id.* (internal quotations and citations omitted).

5.  With respect to the August 31, 2011, pat search and CDV, the Court finds Jordan's evidence does not support a claim of retaliation, for two reasons. First, Jordan presents no evidence Hall even knew Jordan had engaged in a protected activity, prior to the time that Hall

---

6 Hall testified that they only would have issued a CDV if they knew to whom the razor belonged.

engaged in the pat search of Jordan on August 31. In other words, while it is undisputed that it was Hall who issued Jordan the CDV on May 2, 2010, the IRR, Grievance and Grievance Appeal Jordan filed all related to Arcand's refusal to view the video footage of the incident. Hall was scarcely mentioned in Jordan's complaints, and the record is unclear as to whether he knew about the proceedings or not.

6.  Second, even assuming Hall knew Jordan had engaged in a protected activity prior to the time he performed the pat search on August 31, the evidence does not support that the adverse actions, i.e., the pat search and ensuing CDV, were motivated at least in part by the exercise of the protected activity. The Court notes the August 31, 2011, pat search took place over a year after the original altercation on May 2, 2010, and almost exactly a year after Jordan's final grievance on the matter was denied on September 2, 2010. While Jordan maintains that due to his placement in restrictive housing, the August, 2011, search took place during his first encounter with Hall following the May, 2010, incident, after considering the evidence the Court does not conclude Hall was lying in wait for months, awaiting the opportunity to retaliate against Jordan. Instead, the Court finds credible Hall's testimony that he conducted the search because he noticed a bulge in Jordan's pocket[8], and that he then issued the CDV because toilet paper can be considered contraband.[9]

7.  With respect to the remaining three alleged instances of retaliation, the Court assumes without deciding that Jordan was subjected to adverse actions by Hall subsequent to his utilization of the grievance procedures, including the repeated conduct of cell searches, and the confiscation and/or destruction of personal property. *See Edgar v. Crawford*, 2009

---

7 Jordan's Complaint included additional claims against Hall and other Defendants that are not at issue here.
8 Hall further testified that he routinely performed approximately twenty pat searches per shift.
9 Hall testified that toilet paper can be considered contraband because it is not supposed to be removed from housing units, and because it can be used by prisoners to transport sharp weapons.

WL 3835265, at *5 (W.D. Mo. Nov. 16, 2009) (citing *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)) (Although prisoners "do not have a legitimate expectation of privacy and the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells,…the Eighth Amendment protects prisoners from searches conducted only for 'calculated harassment.'").

8. The Court further assumes without deciding that any or all of the alleged adverse actions may have prevented a person of ordinary firmness from continuing in the protected activity undisturbed. *See Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003) (citation omitted) ("The ordinary-firmness test is…designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment.").[10]

9. At issue thus is the third element of Jordan's claim of retaliation, that the adverse actions were motivated at least in part by the exercise of the protected activity.

10. As noted above, on November 1, 2011, Hall and Officer Leach searched Jordan's cell in Housing Unit 6. Jordan claims Hall confiscated a half bottle of prayer oil, two bottles of cologne, and a manila legal folder, and further left Jordan's cell in a "trashed condition."

11. As evidence that Hall's actions were retaliatory, Jordan presented the testimony of Sergeant Bryan Martin, who testified that while Hall and Officer Leach were on a roving search team from January to May 2011, the team was disbanded by the time they searched Jordan's cell in November, 2011. Jordan also presented testimony from Inmate Gregory Hill-Bey, his

---

10 Hall notes that Jordan himself was not deterred, as he continued to file grievances against Hall throughout the time period in question.

cellmate at the time of the search, who testified that he also possessed a bottle of cologne that was not confiscated, and that the cell was "totaled" after the search.[11]

12.   Hall presented testimony from Sergeant Martin that the institution was aware of a security issue with prayer oil having an unknown substance in the bottle, and that officers began confiscating the bottles after an initial field test tested positive for heroin or morphine. Hall further presented Chief of Custody and Security Gregory Dunn, who testified that it was he who gave the order to confiscate the bottles.[12] Further, Sergeant Martin testified that officers confiscated hundreds of bottles of prayer oil during that time frame.[13] Finally, Hall himself testified that at the time he performed the search in November, 2011, he believed prayer oil was under a directive to be seized, and as for the cologne, he believed it either was in an incorrect bottle or there was reasonable suspicion to confiscate it because it seemed tainted or diluted.

13.   Jordan testified that the circumstances *led him to believe* that the search and confiscation were retaliatory, and that he *assumed*, based on the information he received, that Hall was not ordered but himself made the decision to search Jordan's cell. Hall testified that he searched a bare minimum of forty cells per month, and that he had never retaliated against Jordan for any reason.

11 Hill-Bey admitted on cross examination that he did not witness the search, and thus did not know whether Hall saw his bottle of cologne, nor did he know whether it was Hall or Officer Leach who left the cell in a state of disarray. The Court did not find Hill-Bey's testimony credible in any event, as he appeared determined to implicate Hall. Hill-Bey testified about two cell searches, one in November, 2011, and one in March, 2012, and was adamant that Hall participated in both searches. He could not remember the second officer involved in the March search at all, however, and he initially named the wrong officer as the second team member in November, 2011, correctly naming Officer Leach only after being prompted by Jordan.
12 While Officer Dunn did not instruct inspecting officers to confiscate bottles of cologne, he testified they had discretion to do so if the bottle looked suspicious, and Sergeant Martin testified that the prayer oil and cologne bottles were similar in appearance.
13 Investigator James Nicholson testified that there were close to one hundred bottles confiscated, that there were quite a few prisoners involved in the investigation, and that to his knowledge the investigation was not focused on Jordan.

14. Upon consideration of the foregoing, together with the totality of evidence and testimony in the case, the Court finds Jordan failed to meet his burden of showing the November, 2011, search was retaliatory in nature.

15. As noted above, Jordan claims that on or about March 6, 2012, Hall again searched Jordan's cell.[14] Jordan and Hill-Bey testified that while Hall did not confiscate anything on that date, he again left the cell in a "trashed" condition.

16. In light of Hall's credible testimony that he searched a bare minimum of forty cells per month, and that he never retaliated against Jordan for any reason, the Court finds Jordan's scant evidence regarding the March, 2012, search insufficient to meet his burden of demonstrating the alleged adverse action was motivated at least in part by Jordan's engagement in protected activity.

17. Finally, as noted above Hall and Correctional Officer Marty Hibbitts searched Jordan's cell on July 11, 2012.[15] Officer Hibbitts found a razor blade taped under the cell door, and as a result both Jordan and his cellmate were placed in ad-seg confinement pending an investigation of the matter. Because the investigation and video footage review did not reveal the source of the razor blade, Jordan and his cellmate were released from ad-seg confinement after thirty-two days, without receiving a CDV.

18. Once again, in light of Hall's credible testimony that he searched a bare minimum of forty cells per month, and that he never retaliated against Jordan for any reason, the Court finds

---

14 Hall testified he had no recollection of the March 6, 2012 search.
15 On direct examination by Jordan, Officer Hibbitts testified that he and Hall searched Jordan's cell because officials had received an anonymous "kite" saying there was dangerous contraband in the cell. Further, both Officer Hibbitts and Hall testified that it was Housing Unit Sergeant Chris Walker who ordered them to search the cell. On June 25, 2015, Jordan filed a Request for Sanctions against Hall, claiming willful discovery violations with respect to Hall's failure to provide the anonymous kite and/or the order from Walker during discovery. Upon consideration the Court will deny Jordan's motion, as there is no evidence in the record that either the kite or the order was written,

Jordan's evidence regarding the July, 2012, search insufficient to meet his burden of demonstrating the adverse actions were motivated at least in part by Jordan's engagement in protected activity. This is especially true in light of the undisputed evidence that it was Officer Hibbitts, not Hall, who discovered the razor blade taped under the cell door.[16]

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that judgment is entered in favor of Defendant Hall on Plaintiff's claims of retaliation under 42 U.S.C. § 1983, as set forth herein.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 52, a separate Judgment shall accompany this Memorandum and Order.

Dated this 3rd Day of August, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

such that they would have been responsive to a request for production of documents. In any event, the Court did not rely upon the alleged kite or order in reaching its conclusion that Jordan failed to sustain his burden.
16 As further support for its ruling, the Court notes Jordan's cellmate was equally disciplined in connection with this incident, despite the lack of any allegation or evidence that he was a victim of retaliation.